### SMITH v. CORNELL UNIVERSITY.

(Supreme Court, Special Term, Tompkins County. October 15, 1894.)

1. DEEDS—CONSTRUCTION AND EFFECT—RESERVATIONS AND EXCEPTIONS.
   A "reservation" in a conveyance is the withholding by the grantor of some right or privilege for his own use out of or in connection with the estate conveyed, while an "exception" relates to a part of the thing granted.

2. SAME—WATER RIGHTS.
   A "reservation," and not an "exception," is created by a deed conveying certain premises, but "excepting and reserving * * * the right and privilege of taking water from" a stream on the premises conveyed, and "also the right and privilege of three watering places for the convenience of" the grantor.

Action by William Hazlitt Smith against Cornell University. Complaint dismissed.

William H. Smith, in pro. per.
Samuel D. Halliday, for defendant.

FORBES, J. This is an action at law designed to restrain the defendant from trespassing. The rights of the parties depend upon the construction of a deed of conveyance of lands or territory adjoining the plaintiff's premises, situate on the south side of the Cascadilla creek, on East Hill, in the city of Ithaca. The evidence discloses a common source of title of all of the premises covered by the complaint in this action, and that source of title runs back to former grantees, covering a period of more than 65 years. On the 7th day of March, 1833, Otis Eddy and his wife, who were then the owners and in occupation of the entire premises, conveyed, by a warranty deed, to the trustees of the Ithaca Cotton Mills, the land and premises covering the locus in quo. On the 25th day of October, 1840, Otis Eddy and his wife conveyed the southerly portion of said premises to Samuel Giles and John Giles. At the time of this conveyance, and for many years thereafter, the premises last mentioned were occupied for agricultural purposes only. It is conceded that the defendant, by various mesne conveyances, succeeded to, and is now the owner of, all of the interest that was conveyed by Otis Eddy and his wife to the Ithaca Cotton-Mills Company, March 7, 1833, except the reservation of the water rights contained in the deed from Ben Morse and wife to Mary W. Everson, dated October 10, 1863. It is also conceded that the plaintiff, by various mesne conveyances, is the owner of the land and water rights conveyed to Samuel Giles and John Giles by the deed of October 25, 1840. In the deed of March 7, 1833, which

is the conveyance from Otis Eddy and wife to the trustees of the Ithaca Cotton-Mills Company, the following reservations were made:

"First. Excepting and reserving to the said party of the first part, and to his heirs and assigns, forever, the right and privilege of taking water from the ditch or race way leading from said creek to the Cotton Mills, in an aqueduct of one inch in diameter. Also, the right and privilege of three watering places for the convenience of the party of the first part, and his heirs and assigns, forever; the first commencing 5 chains 25 links east from the place of commencing the description of the above premises, and extending east one chain and 25 links, and running to the center of the pond or reservoir. The second watering place to be located 5 chains east of the first above described, and of the same width east and west, to wit, 1 chain and 25 links, and to extend to the center of the ditch or race way. The third watering place to be located 9 chains and 25 links east from the second or last watering place, to be the same width, to wit, 1 chain and 25 links, and to extend to the center of the ditch or race way."

Other reservations, which are not material to the issue in this action, were made by the same deed of conveyance. It will be seen from the form of this deed that it was probably the intention of the grantor, at the close of the description, not to make an exception, within the legal significance of that word, for the reason that the following language was used: "Thence south to the place of beginning, with the following reservation." The description then proceeds with the language quoted: "First, excepting and reserving," etc. Completing the first reservation, the second reservation reads as follows: "And the right and privilege of three watering places for the convenience of the said party of the first part." The language of this reservation must be examined in the light of the circumstances, coupled with the language of the conveyance, for the purpose of ascertaining what was the real situation, and the necessity and object of the exception or reservation. It has been held that the term "exception," in a deed of conveyance, means something not conveyed, but reserved, by the grant. In 7 Am. & Eng. Enc. Law, p. 113, an "exception" is defined to be "a clause in a deed whereby the feoffor, donor, lessor, etc., doth except somewhat out of that which he had granted before by his deed" (Darling v. Crowell, 6 N. H. 423; Goodrich v. Railroad Co., 37 N. H. 149; Case v. Haight, 3 Wend. 635), while the word "reservation" has been regarded as the withholding of a right or privilege, to be used and enjoyed by the grantor, out of, or in connection with, the estate conveyed. A reservation differs from an exception in this: that the latter is a part of the thing granted, of the thing in esse at the time, but the former is of a thing newly-created or reserved out of the thing demised, that was not in esse before. Gould v. Glass, 19 Barb. 192. However, the two words are often used indiscriminately. Inhabitants v. Fairbanks, 41 Me. 307. See Stockwell v. Couillard, 129 Mass. 231, where this language is used:

"Whether a particular provision is an exception or a reservation does not depend upon the use of the word 'reservation' or 'exception,' but upon the nature and effect of the provision itself."

If the language of the conveyance is doubtful or ambiguous, then, to aid the construction, the situation, condition, and circumstances may properly be resorted to. It will be seen from the deed that the grantor, through the conveyancer, intended only a reservation, using

45 N.Y.S.—41

in the first clause the words 'excepting' and 'reserving' as synonymous terms. This is clear, for the reason that the second clause is the reservation of "the right and privilege, for the convenience of the party of the first part," etc. Can it be contended that a right and privilege, to be used for the convenience of the grantor, can be taken as an exception of title to the premises conveyed? It will be seen from the deed of conveyance that all the right, title, and interest of the grantor are conveyed in apt terms and phraseology to carry with them the legal title, and it must be interpreted by the statutory presumption "that the conveyance is intended to carry with it the legal and equitable title of the grantor." 4 Rev. St. (Banks' 8th Ed.) p. 2461, tit. 5, § 1, reads as follows:

"Every grant or devise of real estate, or any interest therein, hereafter to be executed, shall pass all the estate or interest of the grantor or testator, unless the intent to pass a less estate, or interest, shall appear, by express terms, or be necessarily implied in the terms of such grant."

This statute was enacted for the purpose of defeating exceptions to title conveyed unless those exceptions are made in unmistakable terms. The rule of construction with reference to ambiguous conveyances of title has been applied in this state with unbending force against the grantor. It was held in the case of Blackman v. Stryker, 142 N. Y. 555, 37 N. E. 484:

"An exception or a reservation in a deed is to be taken most favorably to the grantee, and, if there is any uncertainty or ambiguity in the language, he is entitled to the benefit of the doubt. The deed must be held to convey all the interest the grantor has in the land, unless the intent to pass a less interest appears by express terms, or is necessarily implied from the terms of the grant."

This is but confirmatory of a prior case in the same court (Clark v. Devoe, 124 N. Y. 120, 26 N. E. 275), and follows Kenyon v. Knights Templars, 122 N. Y. 247, 25 N. E. 299. The doctrine of these cases was suggested in a prior case (French v. Carhart, 1 N. Y. 96):

"Where a deed in 1829 contains a clause by which it is made subject to a reservation contained in a conveyance of the whole premises, given in 1794, between other parties, and the question was upon the language of the deed of 1829, held, that it was to be construed in the same manner as though the language of the reservation, as contained in the original deed, were incorporated into, and formed a part of, the one in question. In the construction of deeds and other instruments, the intention of the parties is to govern; and, where the language used is susceptible of more than one interpretation, courts will look at the surrounding circumstances existing when the contract is entered into, such as the situation of the parties, and of the subject-matter of the contract."

In the last case cited the words used were, "Saving and always excepting to the parties of the first part, their heirs and assigns," etc., "all of the creeks, kills, runs, and streams of water, and so much ground within the same premises as may be requisite and appropriate," etc. It was there held:

"That it was proper to consider the evidence, which showed that when the deed in question was given the grantor owned the premises immediately below, on which were situate and used a mill and dam, which set back the water on the land conveyed, and that the grantee knew of the existence of such mill and dam, and of the manner in which the stream was affected by their use; and it was held that the reservation was not merely of the natural bed of the

stream, but of the right to use the stream in the same manner, and to set back the water to the same extent, as when the grant was made."

In that case, it will be seen, the land was expressly excepted to be used for the purposes mentioned in the conveyance, "the right and flowage of water for mill purposes."

In view of the foregoing authorities, what interpretation must be given to the language of the reservation in the case at bar, "the right and privilege of three watering places, for the convenience of the party of the first part, his heirs and assigns, forever"? An additional clause in the deed from Eddy and wife to Samuel Giles and John Giles, dated October 25, 1840, may be used in connection with the foregoing description to throw some light upon the intention of the parties to that conveyance. Immediately following the clause quoted in the foregoing paragraph, we find the following reservation:

"And the said Eddy also conveys to the said Giles the right and privilege of drawing one inch in diameter of water from the said pond or reservoir between the first and second reservoirs."

And this is a part of the same reservation of the three watering places. Can there be any doubt as to what is intended by the last reservation,—that it was anything more than an easement to draw from the pond or reservoir, at some place to be selected by the grantor, one inch of water? And must not the preceding reservation be interpreted, with the last reservation quoted, as limiting the extent of the right reserved? Nowhere is there any mention that the grantor has the right of flowage, or the title to the land beneath the water or upon the side of the pond. If the object was to except the title to the land, it should have been done by language definite and certain, or unambiguous. Taking the language by itself, what does it mean? And is there any doubt about the purpose for which the reservation was made? The land on the south was then being used for agricultural purposes. The reservation seems to be at convenient points to be reached from the adjoining fields,—for watering stock, for instance, or of taking water therefrom for agricultural uses; such places to be used for the convenience of the grantor, and reserved to him and his heirs and assigns, forever, only for those purposes. The word "right" is defined, in legal jurisprudence, as:

"An enforceable claim or title to any subject-matter whatever; either to possess or enjoy tangible things, or to do any act, pursue any course, enjoy any means of happiness, be exempt from any cause of annoyance, etc. It is often used to designate power, prerogative, and privilege." 21 Am. & Eng. Enc. Law, p. 406.

The word "privilege" is defined as:

"A right peculiar to the person on whom conferred; not to be exercised by another or others. The word 'privilege' may be defined as a right peculiar to an individual or body." 19 Am. & Eng. Enc. Law, p. 120.

In the case at bar the right and privilege mentioned as reserved are used as synonymous terms, and are limited to the use "for the convenience of the grantor, his heirs and assigns." This right or privilege was conveyed to plaintiff. The neighborhood now has become a part of the residence portion of the city of Ithaca, located within a few rods of the university grounds. The place is no longer used

merely for agricultural purposes. Simmons v. Cloonan, 81 N. Y. 557; Paine v. Chandler, 134 N. Y. 385, 32 N. E. 18. The second watering place, locus in quo, and the territory adjoining it on the south, are now used as a lawn on the part of the plaintiff, and as a part of the campus of the university on the part of the defendant, and can only be used by plaintiff so far as they are reasonably necessary and convenient for the purposes for which the reservation was created. Grafton v. Moir, 130 N. Y. 465, 29 N. E. 974. And the premises conveyed are to that extent only servient to the grant. Manufacturing Co. v. Veghte, 69 N. Y. 16; Clark v. Devoe, 124 N. Y. 120, 26 N. E. 275; Welsh v. Taylor, 134 N. Y. 450, 31 N. E. 896; Furner v. Seabury, 135 N. Y. 50, 31 N. E. 1004. The case of Blackman v. Stryker, supra, contained language much stronger than the reservation in the plaintiff's deed. This was a reservation of a family burying ground by M., "saving, excepting, and reserving to the heirs of J. the burying ground lot, with free ingress, egress, and regress into, out of, and from the same, to bury the dead," etc., "forever." In an action of ejectment in that case brought by the heirs of M., it was held:

"M. intended to and did convey the fee of the parcel allotted to him, subject only to an easement in said lot for burial purposes. That, therefore, plaintiffs failed to show a legal title, and were not entitled to recover."

It must be held in the case at bar that the original grant reserved to the plaintiff an easement only to the second watering place, and that the fee passed to the grantee, subject to the right and privilege of the use of said watering place for all of the purposes intended by that conveyance. If I am right in the conclusion which I have reached, this action cannot be maintained as an action of trespass. To go beyond the complaint, for the purpose of determining to what rights and privileges the plaintiff is entitled, or what restrictions may be imposed by the defendant upon the occupation of the reservation, under the evidence in this case, is unnecessary; and a further opinion with reference to the enjoyment of the easement, under the circumstances, would be clearly obiter dictum, and would in no manner bind the parties to this litigation, as their rights might depend upon a variety of circumstances undisclosed by the evidence in this case.

The complaint must therefore be dismissed, with costs, and judgment may be entered accordingly.