[L. A. No. 168.    Department One.—July 9, 1897.]
# GEORGE H. GOULD, RESPONDENT, v. C. F. EATON ET AL., APPELLANTS.

WATER RIGHTS—DIVERSION OF STREAM TO NONRIPARIAN LANDS—INJUNC-
TION—DECREE— MODE of ASCERTAINING QUANTITY—APPEAL—REVIEW
—PRESUMPTION.—Upon appeal by the defendants from a judgment en-
joining them from the diversion of the waters of a creek to lands not
riparian to the stream, and from interfering with the flow directly back
into the stream from the mouth of the tunnel constructed by them, of
one and forty-three hundredths inches of water measured under a four
inch pressure, which the court found was diverted by the tunnel, where
there is no bill of exceptions, or transcript of the evidence set forth in
the record, such finding cannot be questioned by reason of a statement
therein of the mode by which that amount can be ascertained, there
being no evidence as to such mode; and it must be presumed upon such
appeal that the evidence was satisfactory to the court, and its conclu-
sion must be accepted as correct.

ID.—RIGHTS OF RIPARIAN OWNER LIMITED.—The rights of a riparian owner
are limited to the ordinary and reasonable use of the water which flows
in the stream, and do not include a proprietorship in the *corpus* of the
water, nor the right, as against an inferior proprietor, to divert the
water to nonriparian lands.

ID.—EFFECT OF GRANT BY RIPARIAN OWNER—RIGHT OF DIVERSION TO NON-
RIPARIAN LANDS.—A riparian owner may contract, as against himself,
or his grantee, that another person may divert the water of the stream
to nonriparian lands; but, not having the right himself to make such
diversion, as against another inferior proprietor, he cannot grant it,
so as to affect the rights of such inferior proprietor by the contract.

ID.—RIGHTS OF INFERIOR PROPRIETOR—INJUNCTION—DAMAGE IMMATE-
RIAL.—The inferior proprietor has the right to the flow of the entire
stream in its natural channel, irrespective of his use of the water, and is
entitled to an injunction to prevent the diversion thereof, regardless of
the amount of injury or damage he may have sustained, the claim of
right to divert the flow being sufficient to authorize equity to interfere
to prevent the claim from ripening into a right.

ID.—RIGHTS OF UPPER PROPRIETOR—CHANGE OF MODE OF RETURN OF FLOW
TO CREEK—IMPROPER DECREE.—If water diverted from the creek by
an upper proprietor is allowed to return to it before it reaches the land
of the inferior proprietor, the manner in which it is returned is imma-
terial to him, and the upper proprietor has the right to change the
manner of return to his advantage, so long as the rights of the inferior
proprietor are not impaired; and it is improper, in a decree requiring
the upper proprietor to permit a certain amount of water to flow back
into the creek from his tunnel to require the flow "in the manner in
which the water from said tunnel was flowing back into said creek at
the time of the commencement of the trial."

ID.—DECREE DEPENDING UPON EXISTING CIRCUMSTANCES—RIGHT TO AP-
PLY FOR MODIFICATION.—Where the court finds that the tunnel of the

defendants as now constructed and used, diverts a specified quantity of water from the stream, and will continue to divert that amount "under the conditions now existing," the decree should not render it incumbent on the defendants to permit that quantity of water to flow back into the stream under all circumstances, but should give leave to the defendants, upon showing that the conditions have changed to an extent authorizing the interference of the court, or that the operation and use of the tunnel will justify it, to apply for a corresponding change in the judgment.

Appeal from a judgment of the Superior Court of Santa Barbara County. W. B. Cope, Judge.

The main facts are stated in the opinion of the court rendered upon the former appeal by plaintiff. (*Gould* v. *Eaton*, 111 Cal. 639, 641–45; 52 Am. St. Rep. 201.) Further facts appear in the opinion of the court rendered upon this appeal.

*Robert Y. Hayne*, and *W. S. Day*, for Appellants.

The plaintiff shows no use of the waters, and is not injured, having only a bare right to have the stream flow through his land. (*Modoc etc. Co.* v. *Booth*, 102 Cal. 151; *Vernon I. Co.* v. *Los Angeles*, 106 Cal. 237; *Anaheim etc. Co.* v. *Semi-Tropic Co.*, 64 Cal. 192.) As plaintiff has no use for the water, no use by defendants can be adverse. (*Pratt* v. *Lamson*, 2 Allen, 288; *Anaheim etc. Co.* v. *Semi-Tropic etc. Co.*, supra; *Faulkner* v. *Rondoni*, 104 Cal. 140.) Barker had a right to segregate his water from his land, and to grant it to appellants. (*Gould* v. *Stafford*, 91 Cal. 155; *Yocco* v. *Conroy*, 104 Cal. 471; *Gallaher* v. *Montecito etc. Co.*, 101 Cal. 242; *Alta Land etc. Co.* v. *Hancock*, 85 Cal. 223; 20 Am. St. Rep. 217; *Doyle* v. *San Diego etc. Co.*, 46 Fed. Rep. 709; *Hamelin* v. *Bannerman* (1895), L. R. App. Cas. 241; *Hall* v. *Ionia*, 38 Mich. 493, 499; Gould on Waters, 2d ed., sec. 299; Angell on Watercourses, 7th ed., sec. 141.) No definite quantity of water found its way from the stream into the tunnel of defendants; and plaintiff has no right to enjoin the interception of percolating water by defendants, regardless of the source from which it percolated.

(*Ballacorkish Co.* v. *Harrison*, L. R. 5 P. C. 61; *Wheatley* v. *Baugh*, 25 Pa. St. 528, 532; 64 Am. Dec. 721.)

*R. B. Canfield*, for Respondent.

Riparian owners are limited to a reasonable use. (Pomeroy on Riparian Rights, sec. 132; *Creighton* v. *Evans*, 53 Cal. 55; *Indianapolis Water Co.* v. *American Strawboard Co.*, 53 Fed. Rep. 970; *Lux* v. *Haggin*, 69 Cal. 394.) A grant by one riparian owner, however good as against himself, cannot affect the rights of other riparian owners. (*Ormerod* v. *Todmorden etc. Mill Co.*, L. R. 11 Q. B. Div. 155; *Kensit* v. *Great Eastern Ry. Co.*, L. R. 27 Ch. Div. 122; *Dumont* v. *Kellogg*, 29 Mich. 420; 18 Am. Rep. 102.)

HARRISON, J.—The facts involved in the judgment herein are set forth in the opinion given upon an appeal therefrom by the plaintiff. (*Gould* v. *Eaton*, 111 Cal. 639; 52 Am. St. Rep. 201.) The present appeal is by the defendants from that portion of the judgment which enjoins them from diverting to lands not riparian to the creek any of the waters naturally flowing in its channel, and from preventing or interfering with the flow directly back into the stream from the mouth of the tunnel constructed by them of one and forty-three hundredths inches of water, measured under a four-inch pressure. The court found that this amount of water was abstracted and diverted from the channel of the stream by reason of the tunnel constructed by the defendants, and the appeal is directly from the judgment upon the judgment-roll without any bill of exceptions.

The finding by the court of the amount of water diverted by means of the tunnel cannot be questioned by reason of the statement therein of the mode by which this amount can be ascertained. The evidence before the court by which it determined that the loss could thus be ascertained is not before us, and it must be assumed that it was of a satisfactory character, and the

conclusion of the court thereon must be accepted by us as correct.

To the extent that the water diverted by the tunnel is taken from the stream, the defendants are in no different position than they would have been if Barker, the riparian owner from whom they received the right to construct the tunnel, had given them the right to lay a pipe from the stream and granted them the water that should flow through it. The only right in the riparian land which was granted to the defendants was "to enter thereon to prospect for water, and to excavate a tunnel to develope the same at a place to be selected by them within thirty days from the date of their agreement, and the right of way over said land for the purpose of making said tunnel." Under this agreement they selected a place for the tunnel about thirty feet west of the stream, and constructed it in a direction nearly parallel with the stream. The defendants are, therefore, in no respect riparian owners, nor are their rights in the water which flows from the tunnel in any respect those of a riparian owner. The grant from Barker gave them no right in the land which is adjacent to the stream, and they took by the contract no riparian rights in the waters of the stream, and no greater right to these waters than Barker could confer upon any other nonriparian owner.

The rights of a riparian owner are limited to the ordinary and reasonable use of the water which flows in the stream, and do not include a proprietorship in the *corpus* of the water. His right to the water is limited to its use for such as are termed ordinary purposes—*ad lavandum et ad potandum*—or such other uses as are connected with the land bordering on the stream. It is not necessary here to determine the extent to which such uses may be carried, or the purposes to which the water may be applied. They do not in any case include the right as against an inferior proprietor to divert the water to nonriparian lands. Each riparian owner is entitled to the natural flow of the stream

through his land, with the limitation, however, that the superior proprietor may take therefrom such an amount as he is entitled to for riparian purposes. The superior proprietor cannot, however, divert to nonriparian lands the water which he would have a right to use for riparian purposes, but which he does not in fact use. His riparian right is appurtenant to the land bordering on the stream, and does not give him the right to divert the water to lands which are not riparian to the stream, and, as he cannot exercise his right himself, he cannot as against an inferior proprietor confer it upon another. As against himself or his grantee he may contract for the diversion of the water to nonriparian lands (*Gould* v. *Stafford,* 91 Cal. 146; *Yocco* v. *Conroy,* 104 Cal. 468); but the rights of the inferior proprietor will not be affected by such contract. If he does not in fact use any of the water himself, the inferior proprietor has a right to the flow of the entire stream. (*Stockport Water Works* v. *Potter,* 3 Hurl. & C. 300; *Ormerod* v. *Todmorden Mill Co.,* L. R. 11 Q. B. 155; *Swindon Water Works Co.* v. *Wilts etc. Canal Co.,* L. R. 7 E. & I. App. Cas. 697.)

The plaintiff's right to an injunction does not depend upon the amount of injury which he has received. Being a riparian owner, he has a right to the flow of the entire stream as against any diminution thereof by one who is not a riparian owner, and the claim of the defendants that they have a right to divert a portion of its flow authorizes him to invoke the aid of equity in order that this claim may not ripen into a right. (*Moore* v. *Clear Lake Water Works,* 68 Cal. 146; *Stanford* v. *Felt,* 71 Cal. 249; *Swindon Water Works Co.* v. *Wilts etc. Canal Co., supra.*)

That portion of the judgment which requires the defendants to permit this amount of water to flow back into the creek " in the manner in which the water from said tunnel was flowing back into said creek at the time of the commencement of the trial of this action " is not authorized. If the water which is diverted from

the creek is allowed to return to it before it reaches the land of the plaintiff, the manner in which it is returned is immaterial to him, and, if the defendants can at any time change the manner in which it at present is returned, with advantage to themselves, they should be allowed this privilege so long as the rights of the plaintiff are not impaired.

The judgment should be modified in another particular. The court finds that as the tunnel is now constructed and used it diverts the amount of one and forty-three hundredths inches of water from the stream, and will continue to divert this amount of water "under the conditions now existing." The judgment, however, renders it incumbent on the defendants to permit one and forty-three hundredths inches of water to flow back into the stream under all circumstances, and independent of the conditions now existing. It should be modified by giving to either party leave, upon showing that these conditions have changed to an extent authorizing the interference of the court, or that the operation and use of the tunnel will justify it to apply for a corresponding change in the judgment.

The superior court is directed to modify its judgment in accordance with the foregoing opinion, and, as so modified, the judgment will stand affirmed.

GAROUTTE, J., and VAN FLEET, J., concurred.

Hearing in Bank denied.