[Civ. No. 1074.  Third Appellate District.—March 18, 1913.]

L. ADAMS, as Administrator of the Estate of G. W. Cambron, Deceased, et al., Respondents, v. L. J. BARBER, et al., and W. F. COCKRELL, Intervener, Appellants.

WATERS AND WATERCOURSES—ACTION INVOLVING CONFLICTING RIGHTS—FINDINGS.—When in an action involving conflicting water-rights it is found that the plaintiffs' predecessors appropriated the water prior to the time when the defendants' predecessors located upon their lands, a failure to find that the lands of the defendants were riparian to the water is not material.

ID.—FORM OF FINDINGS—WHEN NOT OBJECTIONABLE.—Findings are not legally objectionable because in general form but equivalent to a specific finding as to each material allegation of the pleadings.

ID.—APPROPRIATION OF WATER—FAILURE TO DIVERT THROUGH DEFINITE DITCH.—An actual appropriation of water, without compliance with the code provisions requiring diversion through a definite ditch or watercourse, is effectual as against any one who has not a superior right at the time of the diversion. It cannot divest prior rights, but it will be good as against a subsequent appropriator.

ID.—TIME OF APPROPRIATION—EVIDENCE SHOWING.—In this action involving conflicting rights to waters in a creek, the finding that the plaintiff's predecessors in interest actually diverted and appropriated the waters of the stream not only prior to any appropriation by others, but before the time when the original locator of the defendants' land actually located thereon under the homestead laws, or acquired any interest in the riparian rights attached to such lands, is sustained by the evidence.

ID.—JUDGMENT—CONCLUSIVENESS AS TO WATER-RIGHTS.—A judgment in an action determining water-rights is binding on successors to the parties in a subsequent action, and estops them from asserting rights based upon any claim existing prior to the judgment.

APPEAL from a judgment of the Superior Court of Modoc County. Clarence A. Raker, Judge.

The facts are stated in the opinion of the court.

N. A. Cornish, and Fred I. Lyon, for Appellants.

James Wylie, and Jamison & Wylie, for Respondents.

HART, J.—The plaintiffs instituted this action for the purpose of obtaining a decree permanently enjoining the defendants from obstructing or interfering with and diverting from the lands of the plaintiffs the flow of the waters of High Rock Creek, a natural stream of water located in Modoc County.

The judgment as prayed for in the complaint was awarded the plaintiffs by the court, and from said judgment the defendants and the intervener prosecute this appeal.

The complaint alleges that the lands of the plaintiffs as described in the complaint are peculiarly adapted to agricultural, horticultural, and pasturage purposes, and that they have been so possessed, owned, and farmed by the plaintiffs and their grantors for a period of approximately forty years preceding the date of the commencement of this action; that the climate in the particular locality in which said lands are situated is of an arid character and that the character of the lands is such, by reason of such climate, as to necessitate the irrigation thereof in order to produce thereon crops to which it is adapted as aforesaid; that High Rock Creek is a small stream of water, having its source in the "Warner

Range'' of mountains, situated to the west of the lands of the plaintiffs, and that it flows in an easterly course, between well-defined banks and in well-defined channels, "to, upon, over, and across the said lands of the said plaintiffs and has so flowed from time immemorial; that at the beginning of the irrigating season the flow of water in said . . . creek is about 500 inches, measured under a four-inch pressure, but as the season advances the flow of water in said creek rapidly diminishes and by the beginning of July the flow of water in said creek has practically ceased''; that more than forty years ago the grantors of the plaintiffs "entered upon said . . . creek at a point about one-quarter of a mile west of where the present lower public road leading from Cedarville in said county to Eagleville in said county now runs, and by means of dams placed in the bed and channel of said creek and by means of a ditch leading from said creek at said point to and upon the lands of plaintiffs hereinbefore described, appropriated and diverted all of the waters of said creek to and upon the eighty acres of land owned by E. E. Woodruff and described as follows: . . '. and for more than forty years these plaintiffs . . . and their grantors have continued during each and every year to divert the whole of the waters of said . . . creek to and upon their lands, except a sufficient amount to irrigate the said eighty acres of E. E. Woodruff, and have continuously appropriated and used . . . at least three-fourths of all the waters flowing in the said . . . creek for the purposes of irrigating their said lands''; that the water so appropriated and used by plaintiffs is necessary and indispensable to the growing of crops of grain, hay, pasture, vegetables, and fruit upon said lands of plaintiffs, and that by the use of said water so appropriated, plaintiffs can and do raise and produce such crops; that without said water so appropriated the crops mentioned "would cease to grow, and would not mature,'' and that said lands would thereupon become barren, sterile, unproductive and, therefore, valueless. The complaint further sets up the right to said water by user for a period of more than five years immediately prior to the commencement of this action and then alleges that, during the month of April, 1911, the defendants "wrongfully and without any right so to do, entered upon the channel of said . . . creek, at points above the ditches of plaintiffs thereon

and by means of dams placed in the channel of said creek and ditches leading therefrom, diverted from said creek about 100 inches of the flow of said creek measured under a four-inch pressure, and have obstructed the flow of the waters of said creek, and have diverted the said 100 inches of water aforesaid away from the lands of these plaintiffs," and that such diversion of said water by the defendants has been to the great damage of the plaintiffs and to their lands and crops growing thereon; that the defendants are still so diverting the water from said creek and threaten to continue so to do, etc.

The defendants, answering the complaint, each specifically denies the important allegations thereof, and, as a special defense, sets up a right, by appropriation, user, and as a riparian owner, to the use of the water flowing in said High Rock Creek for the purpose of irrigating his land.

The intervener, Cockrell, alleges in his complaint that the land owned by him and described in his pleading is situated and borders upon both sides of High Rock Creek, and that said creek passes through, over and across said premises between banks in a well-defined channel; that the waters from said creek "have from time immemorial flowed over, through and upon said land, and thereby and in consequence thereof became, and was, and is, the natural source of irrigation for said land"; that more than thirty years ago intervener's grantors and predecessors in interest constructed dams and ditches at a point about one-half mile above his land and by means thereof diverted from said creek at least one-half of the flow thereof and thus caused at least the quantity of water mentioned to pass in and upon his said land; that the water so diverted has been, for more than thirty years immediately prior and up to the time of the comencement of this action, used by the intervener, his grantors and predecessors continuously, uninterruptedly, peaceably, under claim of right as riparian owners, for the purpose of irrigating his said land, and said lands are riparian to and within the watershed of said creek. The intervener further denies that the plaintiffs ever at any time appropriated "all or any of the waters of said . . . creek, or ever used the same adversely to this intervener, and denies that said plaintiffs, or either of them, have the right, or any right to use the said or any of the

waters of said . . . creek, except in a manner subsequent and
subservient to the right of this intervener.'' It is also
averred that said lands of the intervener are of the kind which
are known as arid lands, ''and requires artificial irrigation
during the irrigating season of each year, in order to raise
crops of grass, grain and vegetables in paying quantities
thereon, but without such irrigation, no crop in paying quan-
tities could be grown on said tract''; that the intervener
is the owner of the right to use one-half of all the flow of
water of said . . . creek on the above mentioned lands . . .
as riparian proprietor and as prior appropriator.''

The prayer of the intervener's complaint asks for a decree
adjudging him to be entitled to the right to use one-half of
such flow, and declaring such right to be prior and superior
to all other rights to the use of water in said stream.

Answering the complaint in intervention, the plaintiffs
deny each and all the salient averments thereof and, addition-
ally, plead by way of a special plea an estoppel based upon
a judgment obtained in the superior court in and for the
county of Modoc in the year 1880 by the original owners of
the lands of the plaintiffs described in the complaint against
William R. Freeman, the original locator of the lands of the
defendants and the intervener and described in the answers
to the complaint and in the complaint in intervention, by
which judgment Freeman was enjoined from ''diverting or
obstructing the free flow of all, or any, of the waters of said
High Rock Creek, during the irrigation season, to wit: from
April 1st to August 1st of each year from the lands of plain-
tiffs set forth and described in their complaint, except the
fractional N. W. ¼ of said section 20.'' It is alleged that
by reason of said judgment, the intervener, as the successor
in interest of said Freeman, is estopped from denying that
the plaintiffs are the owners of the flow of the waters of said
creek, ''otherwise than by some right that may have accrued
to them since the date of said judgment, and is estopped
from claiming that he is the owner of the flow of said waters
by any riparian rights or by any right by prior appropri-
ation.''

The court made specific findings in favor of the plaintiffs
as against both the defendants and the intervener upon most
all of the important or material questions of fact submitted

by their (the plaintiffs) pleadings and essential to the support of the judgment under the issues as framed; and then made the following general findings: "That all of the allegations of plaintiffs' complaint and answer to the complaint in intervention are true, except that the natural channel of High Rock Creek does not pass to and over their said lands, but that the waters of said creek are conveyed thereon by means of a ditch and ditches hereinbefore found." "The court further finds that all of the material allegations of defendants' answers, and of each of them, and of the intervener's complaint are untrue."

The appellants contend that the court failed to find upon a material issue and that certain of the findings are not supported by the evidence.

The first point is based upon the alleged failure of the court to find upon the claim of the defendants and the intervener that their lands, described in their pleadings, are riparian to High Rock Creek. It is true that the court made no specific reference to that proposition in its findings, but we are unable to perceive any material importance in the decision of the question in this case whether the lands of the defendants and the intervener were or were not riparian to the waters of said creek, since, as we shall presently see, the plaintiffs are entitled to the use of the most of said waters for the purposes of irrigation under an appropriation thereof made by their predecessors in interest in the lands upon which said waters are used many years before the original grantor of the defendants and the intervener located their respective lands, and the appropriation so made was perfectly valid in all respects. (*De Necochea* v. *Curtis,* 80 Cal. 397, [20 Pac. 563, 22 Pac. 198]; *Duckworth* v. *Watsonville etc. Co.,* 150 Cal. 520, 521, [89 Pac. 338]; *Duckworth* v. *McKinlay,* 158 Cal. 213, [110 Pac. 927].) If, in other words, the original owners of the plaintiffs' lands appropriated the waters of said creek anterior to the time at which the predecessors in interest of the defendants and the intervener located upon their lands, the first mentioned persons, having obtained by appropriation the prior right to said waters, thereby acquired the superior right thereto over the last named persons, notwithstanding that the lands of the latter are riparian to said stream. Therefore, even a finding that the lands of the

defendants and the intervener are riparian to High Rock Creek would be of no assistance to them in this case, nor could it be unless it were shown that the plaintiffs or their predecessors had at some time abandoned their rights as appropriators and that thereupon the rights of the riparianists as such had been fully restored and actually exercised by them.

But, assuming that it is important and that the court should have made a finding upon the riparian character of the lands of the defendants and the intervener, it is clear that that question is fully covered by the general findings of the court as to all the issues tendered by the pleadings, viz.: That, with the exception of the averment that the lands of the plaintiffs are riparian to said creek, all the allegations of the complaint are true, as are likewise the averments of the answer to the complaint in intervention, and that all the allegations of each of the answers of the defendants, as well as those of the intervener's complaint, are untrue. These findings imply that the lands of the latter are not riparian to the waters of said creek, and it may be, were that question an essentially important issue here, that objection might well be made that the findings in that regard were not justified; but, as stated, the finding upon that matter is not material or necessary to the support of the judgment for the reason above suggested. The court did in effect specifically find against the claim of right of the defendants and the intervener to any of the waters of said creek as follows: "Plaintiffs' right to the flow of the waters of said High Rock Creek is superior to any right or claim of the defendants and intervener, or either of them, and that *said defendants and intervener, nor either of them, have any right or title in said water, or any part thereof.*" The latter finding, it will be observed, in reality amounts to a specific finding against the claim of a riparian right to the use of the waters in said stream in the defendants and the intervener. At any rate, the findings in general form are the equivalent of a specific finding as to each material allegation of the pleadings to which they refer as above noted. It cannot, therefore, be said that the court failed to find on a material issue. (*Campbell* v. *Canty,* 162 Cal. 382, [123 Pac. 266].) Findings are not legally objectionable because in that form. (*Johnson* v. *Klein,* 70 Cal. 186, [11 Pac.

606]; *McLennan* v. *Wilcox,* 126 Cal. 52, [58 Pac. 305]; *Mc-Kelvey* v. *Wagg,* 157 Cal. 409, [108 Pac. 268]; *Heinrich* v. *Heinrich,* 2 Cal. App. 482, [84 Pac. 326]; *Young* v. *Clark,* 7 Cal. App. 195, [93 Pac. 1056].)

2. It is next contended that the finding that the plaintiffs and their grantors appropriated the water from High Rock Creek is not supported by the evidence, and in this connection it is argued that, since it is not made to appear from the evidence that the plaintiffs or their grantors diverted the water from said creek and thence to their lands through *a definite ditch or watercourse,* no valid appropriation of said waters was made. (Civ. Code, sec. 1410 et seq.) But if there is evidence showing that the plaintiffs did actually divert from said stream and apply to a beneficial use the waters thereof, ''such actual appropriation, without compliance with the code provisions, is enough to gain him (them) a right as against any one who did not have, at the time of the diversion, a superior right. It cannot divest prior rights, but it will be good as against a subsequent appropriator.'' (*Duckworth* v. *McKinlay,* 158 Cal. 206, 210, [110 Pac. 927]; *Wells* v. *Mantos,* 99 Cal. 583, [34 Pac. 324]; *De Nocochea* v. *Curtis,* 80 Cal. 397, [20 Pac. 563, 22 Pac. 198].) And we think the evidence is clearly sufficient to sustain the finding that the plaintiffs' predecessors in interest actually diverted and thus appropriated, to be applied to a beneficial use, the waters of said creek, not only prior to any appropriation or use thereof by others, but before the time at which the original locator (Freeman) of the lands of the defendants and the intervener under the homestead laws of the general government had actually located the homestead or acquired any interest in the riparian rights attached to said lands.

Now, as to the evidence, it is important, in the first place, to note that counsel stipulated to the verity of the following facts: ''That the lands mentioned in the respective pleadings of the parties belong to the respective parties as therein stated; that there is a claim of title from the government to each of the parties in this suit; that the lands owned by the defendant and intervener was homesteaded by William R. Freeman, and that afterward Freeman died, and a patent was issued to the widow of said Freeman, who was Amy E. Freeman; that the patent was dated December 30th, 1884,

and recorded in the Records of Modoc County, in Book Three of Patents, at page 47; that all the deeds passing from the patentee to the various defendants have a clause in each of them reading as follows: 'Together with all water-rights, water-ditches and water privileges thereunto belonging or in anywise appertaining.' "

From the testimony it appears that R. W. Minto, S. J. Gee, and William H. McCormack originally owned the lands now belonging to the plaintiffs and described in the complaint; that, in the spring of 1868, Minto first diverted on to his tract of land and thereby appropriated a certain quantity of the water flowing in High Rock Creek, and that shortly thereafter and before Freeman homesteaded the lands now belonging to the defendants and the intervener, Gee and McCormack likewise appropriated certain waters of said stream; that Freeman, in the year 1875, first located upon and homesteaded the lands referred to in the answers of the defendants and the complaint in intervention.

Minto testified that he, Gee, and McCormack thus and for the purposes of irrigation appropriated and continuously, each and every year for upwards of forty years thereafter and up to the time of the commencement of this action, used the water of said stream; that they were never interrupted in the use of said waters, except upon certain occasions, to be hereafter noticed, on which their right to so use the water was wrongfully interfered with by said W. R. Freeman, the original locator on the then government lands, now owned by the defendants and the intervener and described in their respective pleadings. He further testified that High Rock Creek was a small stream which had its source in the "Warner Range" of mountains and that its channel runs "between Eagle Creek and Rader Creek"; that there is a very small, if any, flow of water in the creek after the first of July; that the lands for the benefit of which the water from the creek was appropriated by himself, Gee, and McCormack could not be utilized for farming or horticultural or pasturage purposes without the use of the water from said creek.

The witness, Frank Prior, testified that he had lived not over a quarter of a mile from the lands described in the complaint and High Rock Creek for about forty years; that the persons first to use the water from said creek for irrigating

their lands were Minto, Gee, and the Barber brothers in the year 1868 or thereabouts; that the land which was owned and thus irrigated by the Barber brothers was afterward owned by W. H. McCormack and now part of the Cambron estate and of the lands described in the complaint; that the water so diverted from said creek by Minto, Gee, and the Barber brothers was and has been ever since used continuously for the irrigation of the lands of the plaintiffs; that Freeman, grantor of the defendants, began using or attempted to use the water from said creek in the year 1875. L. Adams, the administrator of the estate of G. W. Cambron, deceased, and one of the plaintiffs, testified that he had lived at Eagleville, near the lands and water involved here, since the year 1889, and that in each year during all that period most of the water flowing in said creek was used in irrigating the lands described in the complaint. This witness further testified that nearly all the water of said creek was indispensably necessary to the growing of such crops as the lands of the Cambron estate, referred to in the complaint, were and are peculiarly adapted to; that by so using said water and not otherwise said land could be made productive and, therefore, valuable.

While there is some conflict in the testimony upon the vital points, from the foregoing the court was certainly justified in finding, as it did find, that the plaintiffs and their grantors had actually diverted the water of High Rock Creek for the purpose of irrigating the lands described in the complaint some forty years prior to the time at which this action was instituted, and that such diversion and use had been continuous and uninterrupted during all that period of time, except upon the occasions when Freeman and the defendants and the intervener wrongfully interfered therewith; that, at the time of such original diversion and use of said water, no other person or persons had diverted or used said water, and that such diversion and appropriation was prior to the time at which the original grantor of the defendants and the intervener had located upon and thus became the owner of any riparian rights incident to the lands of the defendants and the intervener by reason of the passing through or immediately past said lands of High Rock Creek; that the right of the plaintiffs and their predecessors in interest to said waters so appropri-

.ated was superior to that of any other person. That the water so appropriated and used by the predecessors in interest of the plaintiffs and the latter was applied to a beneficial use, is, of course, an obvious proposition.

But it appears that the question of the validity of the appropriation by Minto, Gee, and McCormack was adjudicated in their favor and against said Freeman in an action instituted by the first named against Freeman in the year 1879, in the district court of the twenty-first district in and for the county of Modoc. The judgment-roll in said action was received in evidence in the present action, and it appears by the complaint therein that Minto, Gee, and McCormack, as plaintiffs, having first alleged their respective ownerships of the lands mentioned in the complaint herein, averred that, about ten years prior to the commencement of that action, they appropriated all the waters of said High Rock Creek for the purpose of irrigating their said lands; that all said waters were necessary for said purposes. They then charged that Freeman had, on divers occasions, wrongfully and without right, diverted the flow of said waters onto his land (referred to here in the answers and the complaint in intervention) and thus deprived the plaintiffs therein of the requisite water from said creek for their purposes and which said waters they had theretofore appropriated, etc. The ultimate relief asked for was that Freeman, his agents, servants, etc., be permanently enjoined and commanded ''to re frain and forever desist from hereafter diverting or obstructing the free flow of all or any of the waters of High Rock Creek during the irrigating season, to wit: from April first to August first of each year hereafter to all of the lands of said plaintiffs, or to any portion thereof, which lands are individually described as follows,'' describing the lands mentioned in the complaint in this action. By that judgment the superior rights of the original grantors of the plaintiffs to all the water of said creek, with the exception of that appropriated to the Woodruff tract above noted, were conclusively established, and by that judgment Freeman, the defendant in the action in which it was entered, and his privies or successors in interest by title subsequent to the commencement of said action are bound and estopped in this action from asserting any right to any of the water flowing in said

21 Cal. App.—33

creek based upon any claim alleged to have existed anterior to the entry of said judgment. (Code Civ. Proc., sec. 1908, subd. 2; Freeman on Judgments, secs. 300–309; *Riverside Land Co.* v. *Jansen,* 108 Cal. 146, [41 Pac. 40] ; *Green* v. *Thornton,* 130 Cal. 482, [62 Pac. 750] ; *Estate of Bell,* 153 Cal. 331, 345, [95 Pac. 372].)

It follows that, if the defendants and the intervener have any right to divert from said creek and use upon their lands, which are described in their respective pleadings, any portion of the water from said High Rock Creek, such right must have been acquired or have accrued to them since the entry of the judgment in the former action. And this is precisely one of the claims made by the defendants and the intervener, counsel declaring that "it is in evidence and not disputed, that the waters of High Rock Creek have been used every year to irrigate crops on the Freeman tract, and that crops have been *so* raised thereon by the various owners and occupants of said land each and every year for at least nine years last past, with the exception of one year." But counsel are clearly in error in this statement, as must be obvious from a consideration of the testimony produced on behalf of the plaintiffs and of which a brief review is above given. As seen, that testimony discloses that said creek was a small stream, carrying very little water in its channel, and that the original owners of the lands of the plaintiffs, in the year 1868 or 1869, appropriated and they and their successors in interest have ever since continuously used, in the irrigation of their lands, all the water of said creek, except a small portion thereof appropriated and used for a like purpose on an eighty-acre tract belonging to one Woodruff; that such use of said water so appropriated was interrupted only when the original locator on the lands of the defendants and the intervener and the latter themselves wrongfully and without legal right interfered therewith. That testimony is manifestly in direct conflict with the claim that the appellants have used the water of said creek without stint, so far as their necessities were concerned, every year, except one, for the nine years immediately preceding the commencement of this suit.

We are, after a careful examination of the testimony, left in no doubt as to the impregnability of the support which the findings derive from the proofs.

Judgment affirmed.

Chipman, P. J., and Burnett, J. concurred.